# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **CASHENNA CROSS,** *et al.*, | * | |
| Plaintiffs/Counter-Defendants, | * | |
| v. | * | Civil Case No.: PWG-17-2859 |
| **LARRY BRUNNER,** | * | |
| Defendant/Counter-Plaintiff. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Cashenna and Mario Cross entered into a contract ("Contract") on June 12, 2016 to purchase real property located at 127 Coachman Circle, Stafford, Virginia 22554 (the "Property") from Larry Brunner for $539,000. Contract 1, ECF No. 2-1. The Contract required closing by August 1, 2016, *id.* at 2, but when Cashenna Cross inspected the Property on that day, it appeared to her that it was not in the condition that Brunner promised to convey it, and on that basis, she and Mr. Cross did not attend settlement. Compl. ¶¶ 12–19, ECF No. 2. Specifically, the Crosses claim that neither the house nor the pool was clean; repairs to the fence and the roof had not been completed; and in the basement, where the Crosses expected to find the complete wine cellar and wet bar that were advertised and present when Mrs. Cross viewed the Property the month before, she found that the wine rack and some fixtures had been removed. *Id.*

The Crosses filed a Complaint against Defendant in the Circuit Court for Prince George's County, claiming breach of contract and fraudulent misrepresentation. Compl. Brunner removed the case to this Court, ECF No. 1, and filed an Answer and Counterclaim, ECF Nos. 12, 12-1. He

claimed that he had complied with the Contract and it was the Crosses who breached it, when they did not close on the Property by August 1, 2016. Countercl. ¶¶ 3–4.

Brunner has filed a Motion for Summary Judgment, ECF No. 23, arguing that he did not breach the Contract and, alternatively, that "any purported breach of the Contract by Mr. Brunner is not material," Def.' Mem. 2, ECF No. 24.[1] He seeks judgment in his favor on all counts. *Id.* at 15. Because genuine disputes exist about Brunner's performance under the Contract and whether it constituted a material breach that excused the Cross's performance, his Motion is denied as to the parties' breach of contract claims. And, considering the complete absence of any discussion of the Crosses' fraudulent misrepresentation claim, his Motion is denied as to that claim as well.

**<u>Factual Background[2]</u>**

At the time the parties entered into the Contract for sale of the Property, Plaintiffs were living abroad: Cashenna Cross was a major in the U.S. Air Force, stationed in Belgium; Mario Cross was also in the service, stationed in Iraq. C. Cross Dep. 12:3–19, 23:3–24:19, 25:17–21, ECF No. 24-11. They familiarized themselves with the Property from an "online advertisement" and "online MLS photographs," and Major Cross's "sister Mildred and her friend Juanita" visited the listing. *Id.* at 24:20 – 25:5, 26:1–4, 32:6 – 33:3, 33:7–12. The promotional brochure stated that "[t]he custom designed basement features a wine cellar" and referred to "the custom wine cellar's treasures," ECF No. 24-10, at 6, 7; the online listing similarly advertised that "[t]he owners had the basement custom built with wine cellar," as well as stated that the home included a "Wet

---

[1] The parties fully briefed the motion. ECF Nos. 24, 28, 29. A hearing is not necessary. *See* Loc. R. 105.6.

[2] To decide Brunner's Motion for Summary Judgment, I consider the facts in the light most favorable to the Crosses as the non-moving party, drawing all justifiable inferences in their favor. *Ricci v. DeStefano,* 557 U.S. 557, 585–86 (2009).

2

Bar," and additional features included "Wine Cellar," "full wet bar," and "beer taps." ECF No. 24-10, at 9, 10. Major Cross informed Defense counsel that "[t]he installation of this personal property as an integrated part of the house was the primary inducement for [Plaintiffs'] decision to purchase the house." Aug. 8, 2016 Ltr. to Schweitzer, ECF No. 24-10, at 2.

Nonetheless, the Contract did not explicitly provide for personal property related to the wine cellar and bar to convey. Rather, it stated:

> The Property includes the following personal property and fixtures, if existing: built-in heating and central air conditioning equipment, plumbing and lighting fixtures, sump pump, attic and exhaust fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, window shades, blinds, window treatment hardware, smoke and heat detectors, TV antennas, exterior trees and shrubs. Unless otherwise agreed to in writing, all surface or wall mounted electronic components/devices **DO NOT** convey. If more than one of an item convey, the number of items is noted.

Contract ¶ 13. It then noted that one "Pool, Equip, & Cover" and one "Refrigerator w/ice maker" conveyed, along with other items not relevant to the parties' dispute. *Id.* Additionally, it provided that the "[f]ridge in kitchen [would] be replaced with one in Basement." *Id.*

The Contract also stated that Brunner would "deliver the Property free and clear of trash and debris, broom clean and in substantially the same physical condition to be determined as of . . . Date of Home Inspection." Contract ¶ 10. And, it provided that settlement would be on or before August 1, 2016. *Id.* at 2. It stated that "TIMES IS OF THE ESSENCE." *Id.* ¶ 36. Pursuant to the Contract, if Brunner "fail[ed] to perform or comply with any of the terms and conditions of this Contract or fail[ed] to complete Settlement for any reason other than Default by Buyer, Seller [would] be in Default and Buyer [would] have the right to pursue all legal and equitable remedies, including specific performance and/or damages." *Id.* ¶ 29. The Contract stated that it was to be interpreted under Virginia law. *Id.* ¶ 39.

3

A home inspection was conducted on June 15, 2016, while Plaintiffs still were abroad. C. Cross Dep. 49:2–21. In a Home Inspection Contingency Removal Addendum, the parties agreed that Brunner would have "[l]oose section of fence and posts . . . repaired or replaced" by "a contractor licensed to do the type of work required" and "[a]ll damaged roof trusses . . . repaired or replaced by a licensed truss [sic] or qualified company." Addendum, ECF No. 2-3. The Addendum provided that Brunner would provide "receipts or other written evidence that the repairs have been completed . . . prior to or at Purchaser's final walk through inspection of the Property." *Id.* Major Cross first visited the house between July 13 and 20, 2016 to "look[] at the home as it pertained to the MLS, the online advertisement" and "against the contract, [to confirm that] the things that were supposed to be there were there" and that "it equaled the beauty that [Plaintiffs] saw on the MLS"; she then did not return until the final walk through on August 1, 2016. C. Cross Dep. 60:16–18, 62:10–14, 62:21–63:10.

The Crosses believed that items that conveyed under the Contract included "lighting, wine rack, beer tap, and all other permanently installed items which were not electronic or specifically excluded within the Contract . . . and a functioning pool." Compl. ¶13. They claim that, at the final walk through, Major Cross found that the refrigerator was not replaced, "the items promised to be conveyed by the Seller were removed," the Property was "damaged from fixture removal, unclean, and in disarray," and the pool was "in bad condition and damaged." *Id.* ¶¶ 14–15, 18. The Crosses also claim that Brunner "did not perform the contracted repairs." *Id.* ¶ 12. Because the Property's condition was not as the Crosses believed was contractually required, they did not purchase the Property, instead spending time "in multiple lodging and rooming conditions" before finding a comparable house to purchase for $89,000 more than the contract price for the Property.

*Id.* ¶¶ 19, 21. After the Contract fell through, Plaintiffs initiated this litigation, in which Brunner's Motion for Summary Judgment currently is pending.

**Standard of Review**

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). "A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Cole v. Prince George's Cty.*, 798 F. Supp. 2d 739, 742 (D. Md. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986).

**Discussion**

To prevail on a claim for breach of contract under Virginia law, a party must prove "(1) a legally enforceable obligation" of the adverse party to the party claiming breach; "(2) the [adverse party's] violation or breach of that obligation; and (3) injury or damage to the [claiming party] caused by the breach of obligation." *Tech. & Supply Mgmt., LLC v. Johnson Controls Bldg. Automation Sys., LLC*, No. 116CV303AJTMSN, 2017 WL 3219281, at *14 (E.D. Va. July 28, 2017) (quoting *Navar, Inc. v. Fed. Bus. Council*, 784 S.E. 2d 296, 299 (Va. 2016)), *appeal dismissed*, No. 17-2006, 2017 WL 7798636 (4th Cir. Oct. 2, 2017). Here, it is undisputed that the

Crosses were obligated to close on the Contract by August 1, 2016, *see* Contract 2 & ¶ 36, but did not, *see* Def.'s Mem. 4; Pls.' Opp'n 5. The issue is whether Brunner materially breached the Contract first, thereby not only exposing himself to liability but also excusing the Crosses from performance under the Contract and barring Brunner from enforcing the Contract. *See id.* at *15.

"Under Virginia law, 'a party who commits the first material breach of a contract is not entitled to enforce the contract,' and the breach excuses the nonbreaching party from future performance." *Id.* (quoting *Bayer Cropscience LP v. Albemarle Corp.*, No. 696 Fed. App'x 617, 622 (4th Cir. 2017) (brackets omitted) (quoting *Horton v. Horton*, 487 S.E.2d 200, 203 (Va. 1997))). Conversely, if "a contracting party . . . is guilty of only trivial breaches of contract," then that party has substantially complied and, while "[s]ubstantial compliance or substantial performance 'does not constitute a complete defense to liability for breach of contract,'" the adverse party still is obligated to perform under the contract. *Scott v. Clarke*, 355 F. Supp. 3d 472, 504 (W.D. Va. 2019) (quoting *Ballou v. Basic Const. Co.*, 407 F.2d 1137, 1140 (4th Cir. 1969)).

"A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Tech. & Supply Mgmt.*, 2017 WL 3219281, at *15 (quoting *Horton*, 487 S.E.2d at 204). Under Virginia law, "whether the breach of a contractual provision is material is a question of fact best left to the jury." *McPike v. Zero-Gravity Holdings, Inc.*, 280 F. Supp. 3d 800, 811 (E.D. Va. 2017) (citing *Shipp v. Connecticut Indem. Co.*, 194 Va. 249, 257, 72 S.E.2d 343, 348 (1952)); *see also Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, No. 7:16CV00489, 2018 WL 4008993, at *9 (W.D. Va. Aug. 22, 2018) (noting that, under Virginia law, "whether [a party's] actions constitute a material breach of contract [is a] question[] of fact").

Brunner argues that the undisputed evidence demonstrates that he has not breached the Contract. Def.'s Mem. 7. But, with regard to the damaged roof trusses, the Addendum required "receipts or other written evidence that the repairs have been completed." Addendum, ECF No. 2-3. The proof Brunner provided of replacement or repair to the roof trusses by a licensed professional consists only of architectural diagrams; there is no evidence that any work was done. *See* Def.'s Ex. C, ECF No. 24-3. And, the affidavit he provided to show that the work was completed likewise relies on the "drawings for the work" as proof of completion. *See* Brunner Aff. ¶ 7, ECF No. 24-17. The absence of a record that the work was completed under circumstances where it would be reasonable to expect such a record to exist is itself proof that the work was not completed. *See* Fed. R. Evid. 803(7). Thus, on the record before me, Brunner has failed to show that there is no evidence in support of Plaintiffs' claim for breach. Moreover, I note that a "truss" is "[a] framework of timber or iron, or both, so constructed as to form a firm support for a superincumbent weight, as that of a roof or bridge." *See* Truss, Oxford English Dictionary, http://www.oed.com. Given the structural function of a roof truss, it is not clear on the record before me whether a failure to repair the damaged roof would be a material breach.[3] Additionally, I note that the Contract provided that a failure by Brunner to perform under the Contract, which included the repairs required in the Addendum, would be a Default and would entitle Plaintiffs to pursue any appropriate legal recourse. Contract ¶ 29.

Brunner also argues that the removal of the wine rack was not a breach of contract because the wine rack was "a piece of furniture much like a bookshelf," not a fixture, and the Contract did not specifically convey it to Plaintiffs. Def.'s Mem. 9–10. But a piece of personal property may

---

[3] Brunner argues in the alternative that, even if he breached the Contract, none of the alleged breaches was material. Def.'s Mem. 11.

become part of the real estate. *See In re Banks*, 259 B.R. 848, 850 (Bankr. E.D. Va. 2001); *Transcontinental Gas Pipe Line Corp. v. Prince William Cty.*, 172 S.E.2d 757, 761–62 (Va. 1970).

> Three general tests are applied in order to determine whether an item of personal property placed upon realty itself becomes realty. They are: (1) annexation of the property to the realty, (2) adaptation to the use or purpose to which that part of the realty with which the property is connected is appropriated, and (3) the intention of the parties. The intention of the parties making the annexation is the chief test to be considered in determining whether the chattel has been converted into a fixture.

*In re Banks*, 259 B.R. at 850 (quoting *Transcontinental Gas Pipe Line Corp.*, 172 S.E.2d at 761–62).

The proof Brunner provided of the wine rack's purchase as "furniture" refers to an "instaCellar" with a "5 Column Display Row Cellar *Kit*" and two other components, suggesting that they had to be constructed for the cellar, not simply placed along the wall like a bookcase. *See* Receipt, ECF No. 24-13 (emphasis added). Additionally, it appears that, without the "instaCellar," the "wine cellar" would be nothing more than a narrow room. *See* Photograph, ECF No. 24-10, at 13. Moreover, the advertising for the Property stated that "[t]he custom designed basement features a wine cellar" and referred to "the custom wine cellar's treasures," ECF No. 24-10, at 6, 7, and the online listing advertised that "[t]he owners had the basement custom built with wine cellar." ECF No. 24-10, at 9. This language suggests that Brunner intended for the wine rack to be a part of the Property. Because the evidence is equivocal, I cannot conclude as a matter of law that the wine racks were furniture that did not convey. And, given that Major Cross said that "[t]he installation of this personal property as an integrated part of the house was the primary inducement for [Plaintiffs'] decision to purchase the house," Aug. 8, 2016 Ltr. to Schweitzer, ECF No. 24-10, at 2, I cannot conclude that the removal of the wine rack was immaterial. Nor can I conclude as a matter of law that Brunner's return of the wine rack the next day, when the Contract stated that "TIME IS OF THE ESSENCE," would negate this alleged breach.

Brunner also offers photographs and affidavits to show that the Property and pool were "broom clean," as required. Yet the photographs were dated August 2, 2016, after the closing date, and Plaintiffs provided photographs from the August 1, 2016 walk through that show the Property in a condition that was not "broom clean." Brunner acknowledges that

> Mr. and Mrs. Cross provided a number of pictures which largely show the following: water bottles left on the floor, cleaning supplies left behind, a stain in the fridge, a toilet the movers forgot to flush, a small bag of trash left behind, a small stain on the floor, a small stain in the refrigerator, a dirty garage floor, a small gap in the outdoor fence, dryer lint in the lint catcher, a dirty oven and dust on the top of the refrigerator.

Def.'s Mem. 8. Brunner has not shown that the condition depicted in Plaintiffs' photographs qualified as "broom clean" as a matter of law; rather, he states that "broom clean" is not defined under Virginia law. *See id.*

Brunner insists that Plaintiffs cannot challenge the cleanliness because "a $1,000.00 professional cleaning credit was provided to Mr. and Mrs. Cross prior to closing . . . . to avoid a dispute over the condition of the home." *Id.* Yet, he cites an addendum providing for a credit of "$1028.94 *for buyers closing costs*," not for a professional cleaning. ECF No. 24-4 (emphasis added). According to Brunner's real estate agent, "[w]hile the addendum identifies the credit as being for closing costs, this was done for lending purposes. It was always understood by the parties that this credit was for cleaning purposes." Wilborne Aff. ¶ 10, ECF No. 24-18. She also stated that the Crosses' real estate agent "admitted . . . that the home was in what is considered broom swept condition." *Id.* ¶ 13. It is far from clear that Wilborne's testimony as to the understanding of others, or testimony as to what the Crosses' agent said is admissible (*see, e.g.*, Fed. R. Evid. 701, 802). Although Wilborne also stated that the home was in broom swept condition, she did not inspect it until August 2, 2016. *Id.* ¶ 17–19. Wilborne's credibility and the weight her statements should be given compared with the addendum "are jury functions, not those of a judge." *Putman*

9

*v. Savage Arms, Inc.*, No. 17-CV-168, 2019 WL 1007527, at *1 (W.D. Va. Mar. 1, 2019) (quoting *Anderson*, 477 U.S. at 255). Consequently, I cannot conclude as a matter of law that the Property was "broom swept."

In sum, Brunner has not shown that the material facts are undisputed and that a reasonable jury could not find for Plaintiffs on the breach of contract claims. And, he has not addressed the Crosses' fraudulent misrepresentation claim at all. Therefore, his Motion for Summary Judgment, ECF No. 23, IS DENIED. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248, 255; *Cole*, 798 F. Supp. 2d at 742. I will schedule a conference call to set a date for trial.

Date: <u>March 28, 2019</u>　　　　　　　　　　　　<u>　　/S/　　　　　　　</u>
　　　　　　　　　　　　　　　　　　　　　　　　Paul W. Grimm
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

lyb